UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| ALI AMIRI., | } |
|     Plaintiff, | } |
| v. | }   Case No.: 7:18-cv-00425-RDP |
| ARUNAVA GUPTA, et al., | } |
|     Defendants. | } |

## MEMORANDUM OPINION

This case is before the court on the Motion to Dismiss filed by Defendants The Board of Trustees of the University of Alabama ("UA"), Dr. Arunava Gupta ("Gupta"), Dr. Takao Suzuki ("Suzuki"), and Dr. Patrick LeClair ("LeClair" and collectively "the UA Defendants") (Doc. # 7) and the Motion to Dismiss filed by Defendant Dr. Nian X. Sun ("Sun") (Doc. # 10). The parties have fully briefed the Motions. (Docs. # 7, 10, 12, 13, 14). For the reasons explained below, the court finds that the UA Defendants' Motion to Dismiss (Doc. # 7) is due to be granted in part and Sun's Motion to Dismiss (Doc. # 10) is moot as Sun is due to be dismissed from this action.

**I.    Relevant Facts**

"A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for the purpose of resolving the Motions to Dismiss (Docs. # 7, 10), the court treats the facts alleged in the Amended Complaint (Doc. # 4) as true. The court also liberally construes documents filed *pro se*, such as Plaintiff's Amended Complaint (Doc. # 4). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The underlying facts of Plaintiff's claims are outline below.

In August 2011, Plaintiff Ali Amiri ("Plaintiff" or "Amiri") began a PhD program in physics at UA. (Doc. # 4 at ¶ 11). In February 2013, Amiri started his dissertation research at the Center for Materials for Information Technology ("MINT"). (*Id.* at ¶ 12). Gupta, who is the Associate Director of MINT, served as Amiri's research advisor. (*Id.* at ¶¶ 3, 12). Starting in the spring of 2013, Amiri and Gupta began having weekly meetings to discuss the progress of Amiri's research. (*Id.* at ¶ 29). In October 2014, LeClair began attending these meetings. (*Id.*). The weekly meetings of Amiri, Gupta, and LeClair continued through April 2017. (*Id.*). Amiri's research, which focused on a new type of memory technology, continued through June 2017. (*Id.* at ¶¶ 12-13).

On August 15, 2013, Gupta began collaborating with Sun, who is the Director of the Advanced Materials and Microsystems Laboratory ("AMML") of Northeastern University, on Amiri's research. (*Id.* at ¶¶ 4, 13). Afterwards, Amiri began communicating with Sun and Tianxiang Nan ("Nan") about his research. (*Id.* at ¶ 14). Amiri alleges that Sun and Nan published an article that was based on Amiri's research and unsuccessfully attempted to repeat Amiri's work without Amiri's permission and without acknowledging Amiri in their paper. (*Id.* at ¶¶ 15-19). He also appears to allege that Gupta shared his memory technology designs and research with IBM without Amiri's permission and that IBM filed patents on these designs. (*Id.* at ¶¶ 20-27).

Amiri alleges that in the fall of 2015, he had enough credentials to graduate from the PhD program. (*Id.* at ¶ 28). However, when he asked Gupta if he could defend his dissertation and graduate, Gupta explained that Amiri needed to do more research. (*Id.*). According to Amiri, in the fall of 2016, he attempted to get patent protection for his memory device inventions, but Gupta and LeClair refused to undergo the formal disclosure process in accordance with UA's

patent policy and limited Amiri's access to some instruments. (*Id.* at ¶ 30). In October 2016, Amiri contacted Dr. Luoheng Han ("Han"), UA's Associate Dean of the College of Arts and Sciences, about his disagreements with Gupta and LeClair. (*Id.* at ¶ 31). After speaking with Gupta and LeClair, Han allegedly refused to allow further investigation into Amiri's complaint. (*Id.*). In January 2017, Amiri contacted UA's Office for Technology Transfer ("OTT") to discuss possible patent protection for his invention. (*Id.* at ¶ 32). Amiri and the OTT had at least three meetings, but Amiri was unhappy with the outcome of these meetings. (*Id.*).

On March 10, 2017, Amiri met with Gupta, LeClair, and another UA faculty member to inquire about ownership issues regarding the intellectual property for the memory device. (*Id.* at ¶ 33). Amiri did not receive an answer as to whether Gupta and LeClair had any intellectual property claims on the memory device. (*Id.* ¶ 36). On April 21, 2017, Amiri reported a research misconduct complaint to Vice President Carl Pinkert ("Pinkert"). (*Id.* at ¶ 38). Pinkert conducted a research misconduct investigation, and that investigation continued through July 2017. (*Id.* at ¶¶ 39, 52). Amiri has not received a copy of the investigation report. (*Id.* at ¶ 52). He alleges that Suzuki, the Director of MINT, and LeClair tried to stop the investigation. (*Id.* at ¶ 41). He also alleges that, at some point in June 2017, LeClair falsified Amiri's academic transcript by increasing Amiri's GPA hours from 44 to 50 so that Amiri's GPA would decrease. (*Id.* at ¶ 51).

On June 17, 2017, Amiri emailed UA President Dr. Stuart Bell ("Bell"), Suzuki, and LeClair to report that somebody entered the lab in which he worked and "manipulated the research samples." (*Id.* at ¶ 40). In response to Amiri's email, LeClair explained that Amiri is not (and has never been) the sole user of the lab, the labs are shared amongst students, and there

was no intruder in the lab.[1]  (Docs. # 7 at p. 6-7; 7-1 at p. 2; 12 at p. 33).  LeClair also stated that he no longer considered Amiri to be a member of the research team because Amiri was not sharing data with the team or informing them of his progress and requested that Amiri return his laboratory keys and cease his activities in the labs and any MINT facilities.  (*Id.*).

Following LeClair's email, on June 20, 2017, Suzuki emailed Amiri an attached letter stating that Amiri was no longer a MINT student.[2]  (Docs. # 7-2 at p. 2; 12 at p. 34-36).  The letter also included a list of keys that had been provided to Amiri which he was asked to return no later than June 23, 2017.  (*Id.* at p. 2-3).  Amiri alleges that, on June 26, 2017, UA police came to Amiri's residence based on the document created by Suzuki but without a court order or search warrant.  (Doc. # 4 at ¶ 42).  The police officers purportedly demanded that Amiri turn over his keys to the labs and told Amiri not to return to MINT facilities.  (*Id.* at ¶ 43).  Amiri gave the officers the keys and asked them to "stand guard in front of [a desiccator]."  (*Id.* at ¶¶ 43, 45).  Amiri alleges that "another unlawful police operation was conducted by" UA police on June 30, 2017, but he does not explain what the "unlawful police operation" was.  (*Id.* at ¶ 46).  He only states that a police officer told him that Amiri had "been requested to leave."  (*Id.*).

On June 29, 2018, the Associate Provost and Dean of the Graduate School sent Amiri a letter stating that the Graduate School received a notification that he had been dismissed from the Doctor of Science in Physics program and that, based on the scholastic requirements of the Graduate catalog, he was suspended form the Graduate School.  (*Id.*at ¶¶ 48-49, p. 36).  The

---

[1] Because Plaintiff has included his email to Bell, Suzuki, and LeClair in his Amended Complaint, the UA Defendants have provided the court with LeClair's response to Plaintiff's email.  (Docs. # 7 at p. 6-7; 7-1).  Plaintiff has also included LeClair's reply email in his opposition brief.  (Doc. # 12 at p. 33).

[2] Because Plaintiff states that the June 26, 2017 police "operation was claimed to be based on a document created by the MINT Director Takao Suzuki," the UA Defendants have attached the referenced document to the Motion to Dismiss.  (Doc. # 7-2).  Plaintiff has also included Suzuki's reply email and attached letter in his opposition brief.  (Doc. # 12 at p. 34-36).

4

letter also directed Amiri to the process for readmission. (*Id.*). Amiri alleges that he had not previously received a letter or email from the Department of Physics informing him of his dismissal and that he did not receive a hearing regarding his dismissal. (*Id.* at ¶ 50).

On August 7, 2017, UA released the ownership of all rights associated with the memory device to Amiri. (*Id.* at ¶ 56). Since UA's release of this device, Amiri has filed three patents related to the memory device. (*Id.* at ¶¶ 57, 63). Amiri also alleges that in September 2017 Gupta, in collaboration with the other members of the conspiracy group, broke into Amiri's locker and stole eight notebooks, about two hundred pages of designs and calculations, and two flash memories. (*Id.* at ¶ 58). Amiri states that he reported this alleged theft to the FBI. (*Id.* at ¶ 59). He also states that he has written to and spoken with various FBI agents, senators, and congressmen about his concerns. (*Id.* at ¶¶ 60-62, 66-68).

Plaintiff filed his initial Complaint along with an application to proceed *in forma pauperis* on March 19, 2018. (Docs. # 1, 2). On March 21, 2018, the court granted Plaintiff's application to proceed *in forma pauperis* and directed Plaintiff to file an Amended Complaint. (Doc. # 3). Plaintiff filed his Amended Complaint on April 11, 2018. (Doc. # 4). The UA Defendants filed a motion to dismiss on May 24, 2018, and Defendant Sun, who is proceeding *pro se*, filed a separate motion to dismiss on May 29, 2018. (Docs. # 7, 10).

## II. The Documents Defendants Attached to their Motion to Dismiss Are Central to Plaintiff's Claims and Undisputed

UA has attached two documents to its Motion to Dismiss, both of which are a part of an email chain Plaintiff references in his Amended Complaint: (1) LeClair's response email to Amiri's email to Bell, Suzuki, and LeClair reporting that somebody had broken into a lab and (2) Suzuki's letter to Amiri informing him that he was no longer a MINT student and directing him to return his lab keys. (Docs. # 7-1, 7-2). "The district court generally must convert a motion to

dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citing Fed. R. Civ. P. 12(b)).  However, a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. *Id.* at 1276.

In this case, Plaintiff does not dispute that either of these elements are met for the two documents attached in the UA Defendant's Motion to Dismiss.  In fact, Plaintiff attaches and references both of these documents in his opposition brief.  (Doc. # 12 at p. 28-37).  Although Plaintiff disagrees with some of the statements written by LeClair and Suzuki in their emails, he does not dispute the authenticity of these documents.  Additionally, these documents are central to Plaintiff's claims because Plaintiff explicitly references these documents and thereby incorporates them into his Amended Complaint.  (Doc. # 4 at ¶¶ 40, 42, p. 34); *see Taylor*, 400 F.3d at 1276 (explaining that if a "document's contents are alleged in a complaint and no party questions those contents," the court may consider the attached document if it is central to the plaintiff's claim).  As such, the court may consider these documents without converting the UA Defendants' Motion to Dismiss into one for summary judgment.  *See Taylor*, 400 F.3d at 1275.

### III. Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, the complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or

"naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Additionally, courts must liberally construe documents filed *pro se*. *Erickson*, 551 U.S. at 94.

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**IV.    Analysis**

Plaintiff alleges the following claims in his Amended Complaint: (1) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3); (2) violation of the Fourth Amendment; (3) violation of the Fourteenth Amendment; and (4) falsifying official documents. (Doc. # 4). The UA Defendants argue that Plaintiff fails to state a plausible basis for any viable claim in his Amended Complaint. (Docs. # 7, 14). The court explores the merits of the parties' arguments, in turn.

**A.    Plaintiff's § 1985(3) Claim Fails to State a Claim**

In Count One of his Amended Complaint, Plaintiff alleges that Defendants Gupta, Sun,[3] Suzuki, and LeClair conspired to steal his intellectual properties. (Doc. # 4 at ¶¶ 73-75). Plaintiff claims that Suzuki and LeClair supported Gupta "by using their official possibilities" and that LeClair gave false information to Han in order to prevent an investigation. (*Id.* at ¶ 74). He further alleges that Sun has received Amiri's data on a continuous basis since August 2013. (*Id.* at ¶ 75). The UA Defendants argue that Plaintiff has not stated a plausible claim for relief because he has not identified or alleged a violation of any civil right and has not alleged that Defendants were motivated by a class-based discriminatory animus. (Doc. # 7 at p. 9-10).

"To state a claim under § 1985(3), a plaintiff must allege: (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered

---

[3] Plaintiff's § 1985(3) is the only claim he alleges against Defendant Sun. (*See* Docs. # 4 at p. 18-20; 13 at ¶ 1). Because Plaintiff is proceeding *in forma pauperis* in this case, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2)(B)(ii). Here, the court finds that Plaintiff's action against Sun fails to state a claim upon which relief may be granted for the same reasons that this claim is not viable against Defendants Gupta, Suzuki, and LeClair. Accordingly, Sun is due to be dismissed from this action, and his Motion to Dismiss (Doc. # 10) is moot.

injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010). Furthermore, a plaintiff must show that "the conspiracy [is] motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 1971)). Here, the court cannot discern any underlying civil right, and Plaintiff has not alleged racial animus. Accordingly, Plaintiff's § 1985(3) claim (Count One) is due to be dismissed.

### B. Plaintiff's Fourth Amendment Claim Fails to State a Claim

In Count Two of his Amended Complaint, Plaintiff alleges that the June 26, 2017 and June 30, 2017 police operations that were conducted without a court order or search warrant were in violation of the Fourth Amendment.[4] (Doc. # 4 at ¶ 76). Plaintiff's Amended Complaint does not specifically identify the defendant or defendants against whom he is bringing this claim; however, in his opposition brief, he clarifies that this claim is against UA. (Doc. # 12 at ¶ 22). UA argues that Plaintiff's claim fails because his Amended Complaint does not allege that an official policy existed. (Doc. # 7 at p. 10-11).

To state a claim under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (citations omitted). It is well established that a municipality, or in this case a university, "may

---

[4] Liberally construing Plaintiff's *pro se* Amended Complaint, the court finds that Plaintiff's Fourth Amendment claim is brought under 42 U.S.C. § 1983.

not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* And, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

In this case, Plaintiff's Amended Complaint fails to identify -- or even allege -- a UA policy or custom that caused his injury. (*See* Doc. # 4 at ¶¶ 76-79). Construing the pleadings liberally, Plaintiff has made no showing whatsoever that would allow the court to infer that a policy of custom of UA caused his injury such that UA could be held liable for Plaintiff's injuries. *See Mortazavi v. Samford Univ.*, No. 2:17-CV-559-AKK, 2017 WL 3087465, at *2 (N.D. Ala. July 20, 2017). As such, Plaintiff's Fourth Amendment claim (Count Two) is due to be dismissed.

### C. Plaintiff's Fourteenth Amendment Substantive Due Process Claim Fails to State a Claim

In Count Three of his Amended Complaint, Plaintiff alleges that (1) he had a right to study at UA and graduate from UA, (2) UA has deprived him of his rights to do so without being provided any reason, and (3) his dismissal from the program was done without due process. (Doc. # 4 at ¶ 79). In this count, he also alleges that he "has the right to establish a business and exploit his intellectual properties and patents," UA did not issue ownership documents until after Plaintiff hired an attorney, and UA has stolen Plaintiff's notebooks and other properties, which has prevented him from establishing his memory device business. (*Id.* at ¶ 80). Plaintiff claims that these actions are in violation of the Fourteenth Amendment and brings this claim under 42

U.S.C. § 1983. (*Id.* at p. 19). Plaintiff appears to assert this claim solely against UA because he only mentions UA throughout this count. (*See id.* at ¶¶ 79-80). UA points out that it is unclear whether Plaintiff is alleging a procedural or substantive due process claim and argues that, regardless of the type of Fourteenth Amendment claim Plaintiff is pursuing, he has failed to allege a plausible claim. (Doc. # 7 at p. 12). The court addresses both types of due process claims, in turn.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause encompasses both a substantive component and a procedural component. The substantive component of the Due Process Clause protects only "fundamental" rights. *See McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc) (citing *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). Fundamental rights are "protected against certain government actions regardless of the fairness of the procedures used to implement them." *Id.* (internal quotation marks and citation omitted). By contrast, "areas in which substantive rights are created only by state law . . . are not subject to substantive due process protection . . . because 'substantive due process rights are created only by the Constitution.'" *Id.* (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 219 (1985) (Powell, J., concurring)). Such state-law-based rights can be rescinded "so long as the elements of procedural—not substantive—due process are observed." *Id.* Property interests are created and defined by state law rather than the Constitution. *See Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003). "[N]on-legislative deprivations of state-created rights . . . cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrar[il]y and irrationally." *Id.* at 1263.

### 1. Substantive Due Process

In his opposition brief, Plaintiff clarifies that his due process claims related to the memory device and his personal property kept in his locker are substantive due process claims. (Doc. # 12 at p. 9-12). However, Plaintiff's claim based on UA's release of the ownership of all rights associated with the memory device does not support a substantive due process theory because (1) Plaintiff has not alleged a fundamental right and (2) Plaintiff has exclusive control over any rights associated with the memory device. Plaintiff's allegation that UA stole Plaintiff's notebooks and other properties also does not support a substantive due process claim because, even assuming Gupta broke into Amiri's locker as alleged, UA may not be sued under § 1983 for an injury inflicted solely by its employees or agents without there also being an underlying UA policy or custom (which, again, Plaintiff has not alleged) causing the alleged theft. *See Monell*, 436 U.S. at 694. Additionally, to the extent that Plaintiff is alleging a substantive due process claim based on his dismissal from the Doctor of Science in Physics program or his suspension from the Graduate School, he has failed to state a claim because there is no fundamental right to a public education. *See, e.g.*, *Fedorov v. Bd. of Regents for Univ. of Georgia*, 194 F. Supp. 2d 1378, 1391 (S.D. Ga. 2002) (finding that attending dental school is not a fundamental right); *Alsup v. Nw. Shoals Cmty. Coll.*, No. 3:15-CV-00248-CLS, 2016 WL 5253212, at *15 (N.D. Ala. Sept. 22, 2016) ("Plaintiff does not allege the violation of one of her fundamental constitutional rights, nor could she, because there is no fundamental right to a public education."). Therefore, Plaintiff's substantive due process claims, based on the facts alleged in the Amended Complaint, fail and are due to be dismissed.

## 2. Procedural Due Process

To state a procedural due process claim, a plaintiff must assert (1) a deprivation of a protected liberty or property interest, (2) state action that deprives him of that interest, and (3) constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "[A] student dismissed from a public educational institution for academic reasons is entitled to less process than a student dismissed for disciplinary reasons." *Rollins v. Bd. of Trustees of the Univ. of Ala.*, 647 F. App'x 924, 929 (11th Cir. 2016) (citing *Haberle v. Univ. of Ala.*, 803 F.2d 1536, 1539 (11th Cir.1986)). Although the Constitution does not require schools to hold formal hearings for academic dismissals, a school is required to engage in a careful and deliberate decision-making process. *Id.*

In this case, Plaintiff argues that his dismissal from the PhD program was done without due process. (Doc. # 4 at ¶ 79). UA does not dispute that its actions constituted state action. (Doc. # 7 at p. 13). However, it notes that Plaintiff has only alleged that he was suspended, not permanently dismissed, from the Graduate School. (*Id.*). UA also asserts that Plaintiff received correspondence from the Graduate School that referenced the process for readmission. (Docs. # 4 at p. 36; 7 at p. 13). In advocating for dismissal of Plaintiff's procedural due process claim, UA further contends that because Plaintiff's dismissal was for academic reasons, he is entitled to less process than a student dismissed for disciplinary reasons and Plaintiff has failed to argue that UA did not engage in a careful and deliberate decision-making process. (Doc. # 7 at p. 13-14). In addition, UA highlights the conclusory nature of Plaintiff's allegation that he was dismissed without due process and argues that this allegation does not meet applicable pleading standards. (Doc. # 14 at p. 3).

Although the court agrees with UA that Plaintiff is entitled to less process (based on the facts pled in the Amended Complaint) as compared to a student dismissed for disciplinary reasons, a ruling on whether UA engaged in a careful and deliberate decision-making process is premature at this point in the litigation. The court also agrees with UA that Plaintiff's procedural due process claim contains conclusions and naked assertions. Nevertheless, due to Plaintiff's *pro se* status, the court will allow Plaintiff one final opportunity to replead his procedural due process claim. But, to be clear, he must allege sufficient facts that show he was denied due process in connection with his academic dismissal. Accordingly, the UA Defendants' Motion to Dismiss (Doc. # 7) is due to be denied without prejudice as to Plaintiff's procedural due process claim.

### D. Plaintiff's Falsifying Official Documents Claim Is Due to Be Dismissed

In Count Four of his Amended Complaint, Plaintiff alleges that Suzuki and LeClair falsified official documents. (Doc. # 4 at ¶¶ 81-82). Specifically, he claims that LeClair falsified Plaintiff's official transcript and that Suzuki signed a false document stating that LeClair was Amiri's advisor. (*Id.*). The UA Defendants argue that, because Plaintiff has not stated legal claims, these claims are due to be dismissed. (Doc. # 7 at p. 15). The court agrees. Count Four of Plaintiff's Amended Complaint does not state a legal claim and is due to be dismissed.

### V. Conclusion

After careful review, the court concludes that UA Defendants' Motion to Dismiss (Doc. # 7) is due to be granted in part and Sun's Motion to Dismiss (Doc. # 10) is due to be administratively terminated as moot. However, Plaintiff must replead that sole remaining claim with a sufficient factual basis. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this July 24, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE