UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **ALI AMIRI.,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 7:18-cv-00425-RDP |
| } | |
| **THE BOARD OF TRUSTEES OF THE** } | |
| **UNIVERSITY OF ALABAMA,** } | |
| } | |
| **Defendant.** | |

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion to Dismiss. (Doc. # 29). After careful consideration, and for the reasons explained below, the court concludes that the motion is due to be denied.

**I.      Relevant Facts**

In August 2011, Plaintiff Ali Amiri began a PhD program in physics at the University of Alabama ("UA"). (Doc. # 28 at ¶ 5). In February 2013, Amiri started his dissertation research at the Center for Materials for Information Technology ("MINT"). (*Id.*). By fall 2015, Plaintiff had enough credentials to graduate from the PhD program, and he requested to defend his dissertation. (*Id.*). However, UA postponed the dissertation defense (without good reason, according to Plaintiff), and Plaintiff continued his research until June 2017. (*Id.*).

In June 2017, a dispute between Plaintiff and the UA administration erupted concerning Plaintiff's access to UA laboratory facilities, the details of which are not relevant for purposes of this motion to dismiss. (*Id.* at ¶¶ 7-9). Relevant here, however, is Plaintiff's assertion that a June 20, 2017 letter from the MINT Center Director confirmed that, as of that date, Plaintiff was an active UA student working on his dissertation research. (*Id.* at ¶ 11). The letter informed Plaintiff

that he was no longer a MINT student because he was not being supervised by MINT faculty or supported by MINT research funds, and it instructed Plaintiff to return all MINT facility keys to the MINT Facility Manager. (Doc. # 7-2 at 2). But, the letter does not state that Plaintiff had been dismissed from his graduate program at UA. It reads instead, "Of course, when you again become a MINT student, with your supervisor's approval you may request access [to MINT facilities]." (*Id.*).

Nine days later, on June 29, 2017, Plaintiff received a letter from the graduate school informing him that "the graduate school received notification from the Department of Physics that you have been dismissed from the Doctor of Science in Physics program." (Docs. # 28 at ¶ 11; 4 at 36).[1] Pursuant to UA policy, the letter explained, "departmental dismissal from a degree program also results in suspension from the Graduate School." (Doc. # 4 at 36). As a result, Plaintiff was not permitted to register for the fall 2017 or any future semester unless he was first readmitted to the Graduate School, in a different program. (*Id.*). The letter then provided an internet link to the online Graduate Catalog, which describes the process for readmission. (*Id.*).

According to Plaintiff, UA claims his dismissal was for academic reasons, not disciplinary reasons. (Doc. # 28 at ¶ 12). Plaintiff also claims academic standing is determined at the end of each semester and, at the end of the spring 2017 semester, he was in good academic standing. (*Id.*). He further asserts that UA failed to provide any specific reasons for his dismissal

---

[1] The letter is included as an attachment to Plaintiff's First Amended Complaint. (Doc. # 4 at 36). Plaintiff cites the letter in his Second Amended Complaint, the letter is central to Plaintiff's claim, and its authenticity is not challenged. Thus, the court may consider the letter in ruling on Defendant's motion to dismiss. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (district court did not err in considering materials outside the complaint in ruling on a motion to dismiss because the plaintiff referred to the document in the complaint, the document was central to Plaintiff's claim, and its authenticity was unchallenged).

(academic or otherwise), never notified him that a dismissal procedure had begun, and held no hearing regarding his dismissal. (*Id.* at ¶¶ 10, 12).

Plaintiff claims the manner in which UA dismissed him from his program violated his right to procedural due process under the Fourteenth Amendment. He has sued the Board of Trustees of the University of Alabama for this alleged violation under 42 U.S.C. § 1983, and the Board has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the nonmoving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Thus, for the purpose of resolving Defendant's motion to dismiss (Doc. # 29), the court treats the facts plausibly alleged in Plaintiff's Second Amended Complaint (Doc. # 28) as true.

The court also liberally construes pro se filings, such as Plaintiff's Second Amended Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x. 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## IV. Analysis

"[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state

action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Defendant concedes that it is a state actor. (Doc. # 29 at 6). But it argues that Plaintiff has failed to allege facts plausibly supporting the first and third elements of his claim— that Plaintiff was deprived of a constitutionally protected liberty or property interest and that the process UA afforded Plaintiff was constitutionally inadequate. However, for the reasons explained below, the court is unable to conclude that is so, at least at this time.

### A. Plaintiff Has Plausibly Alleged a Deprivation of a Constitutionally Protected Property Interest

Property interests "are not created by the Constitution" but instead "stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Where granted by state law, individuals may have a property interest in a government benefit, including an interest in remaining enrolled at a state educational institution. *See Barnes v. Zaccari*, 669 F.3d 1295, 1304 (11th Cir. 2012). To have a constitutionally protected interest in a government benefit, a person must have "a legitimate claim of entitlement" to the benefit. *Id.* (internal quotation marks omitted) (quoting *Roth*, 408 U.S. at 577).

In *Barnes*, the Eleventh Circuit held that a student expelled from a Georgia state college had a legitimate claim of entitlement to remain enrolled at the college unless he violated the student code of conduct. 669 F.3d at 1304. The Georgia University System Board of Regents had promulgated a policy manual that authorized educational institutions to formulate rules and regulations for their students and to punish, suspend, or expel students for violating those rules. *Id.* Based on that policy, the college had promulgated a student code of conduct that authorized it to expel and suspend students found responsible for violating the code. *Id.* The court reasoned that the policy and the code permitted the college to impose disciplinary sanctions only upon

students who violated the college's rules and regulations. *Id.* By implication, the college lacked the "authority to discipline students who follow the rules and regulations." *Id.* Absent a violation of the college's code of conduct, the court held, a student "has a legitimate claim of entitlement to continued enrollment" at the state college. *Id.* at 1305.

Defendant argues Plaintiff has failed to plausibly plead a deprivation of a constitutionally protected property interest for two reasons. First, Defendant argues that Plaintiff's § 1983 claim is premature because a procedural due process violation "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). In other words, "the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994). In this case, Defendant argues no due process violation has yet occurred because UA offered Plaintiff a process to reapply for admission in its suspension letter (Doc. # 4 at 36) and Plaintiff has nowhere alleged that he reapplied and was denied admission. (Doc. # 29 at 8).

The *Zinermon* and *McKinney* decisions are of no help to Defendant at this stage of the case. Those opinions say that, in some cases, postdeprivation tort remedies in state court are all the process that is due when the state deprives an individual of a property or liberty interest. *See Zinermon*, 494 U.S. at 128-31; *McKinney*, 20 F.3d at 1563-64. To be sure, *Zinermon* and *McKinney* do *not* hold that suspension of a student by a state institution is not a constitutionally cognizable property deprivation so long as the student has the opportunity to reapply for admission. An indefinite academic suspension, like the one Plaintiff claims to have received here, clearly constitutes a deprivation of property if Plaintiff had a legitimate claim to continued

6

enrollment at UA. *See Goss v. Lopez*, 419 U.S. 565, 581 (1975) (explaining that in the context of high school student suspensions, "due process requires, in connection with a suspension of *10 days or less*, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story") (emphasis added).

Second, Defendant argues Plaintiff has failed to allege that (1) any existing UA code of conduct or policy manual was violated or (2) any such provision would entitle him to remain enrolled at UA. While Plaintiff's Second Amended Complaint does not explicitly identify any UA policies that grant him a legitimate claim of entitlement to remain enrolled at UA, the court concludes that, liberally construing Plaintiff's pro se Complaint, Plaintiff has alleged that he was suspended in violation of UA policies. In particular, Plaintiff asserts in his Second Amended Complaint that he "has the right to study at the university and [graduate] based on the rules and procedures" and that UA "has deprived the plaintiff of his rights." (Doc. # 28 at ¶ 10). This language -- again, construed liberally -- suggests that Plaintiff believes he was suspended in violation of UA policies and procedures. Whether a UA policy, student code of conduct, or other similar provision in fact grants students a legitimate claim of entitlement to continued enrollment at UA is a question that must be addressed through discovery. The court will therefore grant Plaintiff limited discovery on the threshold question of whether he has a legitimate claim of entitlement to continued enrollment at UA.

### B. Plaintiff Has Plausibly Alleged Constitutionally Inadequate Process

If a plaintiff shows state action deprived him of a constitutionally protected property interest, "due process is implicated and the question becomes what process is due." *Grayden*, 345 F.3d at 1232. Different process is due when a public educational institution dismisses a

7

student for academic reasons as opposed to disciplinary reasons. "[A] student dismissed from a public educational institution for academic reasons is entitled to less process than a student dismissed for disciplinary reasons." *Rollins v. Bd. of Trustees of the Univ. of Alabama*, 647 F. App'x 924, 929 (11th Cir. 2016) (citing *Haberle v. Univ. of Ala.*, 803 F.2d 1536, 1539 (11th Cir. 1986)). "In fact, the Constitution does not require schools to hold formal hearings for academic dismissals." *Id.* at 930. However, due process does require that a school engage in a "careful and deliberate" decisionmaking process for academic dismissals. *Haberle*, 803 F.2d at 1539 (quoting *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85 (1978)).

Here, Plaintiff has adequately alleged that UA failed to engage in a "careful and deliberate" decisionmaking process before suspending him. Plaintiff claims the decision to suspend him on academic grounds was made within a period of nine days and that Plainttiff was in good academic standing at the time of his suspension. Moreover, Plaintiff claims UA failed to provide any specific reasons for his dismissal (academic or otherwise), never notified him that a dismissal procedure had begun, and held no hearing regarding his dismissal. While a formal hearing is not required, due process requires some evidence that UA engaged in a "careful and deliberate" decisionmaking process. Plaintiff's Second Amended Complaint plausibly alleges that UA failed to engage in such a process. Accordingly, Defendant's motion to dismiss is due to be denied.

V.  **Conclusion**

After careful review, the court concludes that Defendant's Motion to Dismiss (Doc. # 29) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this October 2, 2018.

                                                                                                                    **R. DAVID PROCTOR**
                                                                                                                     UNITED STATES DISTRICT JUDGE